UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JONATHAN F. DILLARD,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, US MARSHALS, CRYSTAL LALEMAN, DEBORAH GRASHAM, KASSANDRA MCGRADY, and COLIN STARRY,<br><br>　　　　　　Defendants. | Case No. 1:23-cv-00572-AKB<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

## INTRODUCTION

This in forma pauperis case filed by Plaintiff Jonathan F. Dillard ("Plaintiff") was assigned to this Court for screening. The Court is required to review complaints filed by in forma pauperis litigants and dismiss any claim that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(a)(1) & (e)(2); *see Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (holding that "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners").

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff "pleads factual content that allows the

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 1**

court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id*. (citing *Twombly*, 550 U.S. at 556), or provides sufficient facts "to raise a reasonable expectation that discovery will reveal evidence of" the defendant's wrongdoing. *Twombly*, 550 U.S. at 556. A pleading that offers merely "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Claims against federal actors cannot be asserted under the Civil Rights Act, 42 U.S.C. § 1983, *et seq*., which applies only to state actors. Instead, such claims must be brought under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the civil rights counterpart for federal government actors. A *Bivens* action requires that a plaintiff plead facts alleging a violation of constitutional rights caused by agents acting under the color of federal law. *See Morgan v. United States*, 323 F.3d 776, 780 (9th Cir. 2003). Under *Bivens*, the federal employee must be sued in his or her individual capacity. *Vaccaro v. Dobre*, 81 F.3d 854, 857 (9th Cir. 1996).

## REVIEW OF AMENDED COMPLAINT

1. **Allegations**

Plaintiff's civil rights claims all arise from a probation or supervised release revocation in his criminal action, Case No. 1:15-cr-00170-DCN, *United States v. Dillard* ("Case 170"). Plaintiff asserts that he suffered illegal detention and false imprisonment as a result of Defendants' actions, as follows. "The U.S. district attorney assistant Kassandra McGrady, did file a fraudulent and fictitious petition asking for a warrant to be ordered for my arrest and that I be detained in a hold facility by the US marshals of Boise, Idaho." (Dkt. 2-3, p. 5). The alleged false grounds were that Plaintiff did not follow the court order requiring him to report to his probation officer in writing that he had enrolled in mental health counseling. (*Id*.). Plaintiff disagrees with the government's

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 2**

interpretation of exactly what the prior order regarding mental health counsel required him to do. (*Id.*, p. 5).

United States probation officer Crystal Laleman allegedly provided false testimony and false reports to the courts regarding the basis for the probation revocation. Another probation officer, Colin Starry, allegedly tampered with Plaintiff's witnesses by intimidation, harassment, and threats to revoke the witnesses' professional licenses. (*Id.*, p. 6).

At the revocation hearing, Laleman testified that Plaintiff gave her the necessary information about counseling via telephone and text messaging, but Judge Grasham would not accept that information as "written" notification in compliance with the order. Plaintiff alleges that Judge Grasham, "with intent to be unlawful . . . den[ied] all [his] rights of equal protection under the law and by the law, to have [him] illegally imprisoned and so forth and did so knowing the warrant for [his] arrest was a fraudulent warrant and the petition for it as also, due [to] the fact also according to technically texting my p.o. is in writing, whereas my p.o. did admit that I also text[ed] her on 05.11.2023." (*Id.*).

Plaintiff asserts that he provided all this information to this Court in Case 337, and the Court "ignored this fact." (*Id.*). On the contrary, the Initial Review Order in Case 337 shows that the Court reviewed each of Plaintiff's claims and provided standards of law and instructions for amendment. (Dkt. 22 in Case 337).

**2. Claims Related to Plaintiff's' Other Civil Rights Case and His Criminal Case**

Some of Plaintiff's claims duplicate those asserted in Case No. 1:23-cv-00337-AKB, *Dillard v. Ada County Jail* ("Case 337"). In Case 337, Plaintiff was instructed that civil rights claims challenging the correctness of the decisions the judge made in Plaintiff's federal criminal

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 3**

probation violation proceedings in Case 170 could not be litigated in a civil rights case. *See* Case 170.[1]

A collateral challenge to a criminal case decision is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). An attempt to relitigate a claim already decided in a criminal case may be barred by res judicata. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984). Because the Court explained these principles in the Initial Review Order in Case 337, it will not do so again here, but refers Plaintiff to that Order. (*See* Dkt. 22, pp. 5-9 in Case 337). If, after contemplating the facts in light of the law, Plaintiff believes he can state civil rights claims, he must do so either in Case 337 or in this case, but not both.

3. **Claims Barred by Judicial Immunity**

Plaintiff sues United States Magistrate Judge Debora Grasham, who held various preliminary hearings and entered orders on revocation and detention proceedings in Plaintiff's criminal case. (*See* Dkts. 143, 144, 170, 171, 177 in Case 170).

Under the doctrine of absolute judicial immunity, a judge is not liable for monetary damages for acts performed in the exercise of his or her judicial functions. *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978). To determine whether an act is judicial in nature so that immunity would apply, a court looks to "the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Id.* at 362.

---

[1]     Federal Rule of Evidence 201 provides that a Court may take judicial notice of an adjudicative fact which is "not subject to reasonable dispute." The advisory committee's notes to Rule 201 clarify that *adjudicative facts* are "simply the facts of the particular case." In addition, "courts routinely take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (bracketed content added).

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 4**

Once it is determined that a judge was acting in his judicial capacity, absolute immunity applies, "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (internal citations omitted). For example, judicial immunity is not lost "by allegations that a judge conspired with one party to rule against another party: 'a conspiracy between judge and [a party] to predetermine the outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce the immunity extended to judges.'" *Moore v. Brewster*, 96 F.3d 1240, 1244 (9th Cir. 1996) (quoting *Ashelman v. Pope*, 793 F.2d at 1078), *superseded by statute on other grounds*).

In addition, "judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Absolute immunity for judicial officers "is justified and defined by the functions it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227 (1988).

There are two circumstances in which absolute judicial immunity does not apply. First, a judge may not rely on immunity when he or she performs an act that is not "judicial" in nature. *Stump*, 435 U.S. at 360. For example, a justice of the peace who left the bench and personally used physical force to evict a person from the courtroom was deemed to have committed a nonjudicial act not covered by absolute immunity. *See Gregory v. Thompson*, 500 F.2d 59, 63 (9th Cir. 1974). On the other hand, when a judge ordered officers "to forcibly and with excessive force seize and bring plaintiff into his courtroom," judicial immunity applied, because a "judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge." *Mireles*, 502 U.S. at 12. Judicial immunity was not denied even though the judge erred

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 5**

in authorizing the officers to use excessive force, because it is the nature and function of the act (ordering officers to act), not the act itself that is scrutinized.

Second, absolute immunity does not apply when a judge acts "in the clear absence of all jurisdiction." *Stump*, 435 U.S. at 356 (internal citations omitted). When immunity is at issue, the scope of a judge's jurisdiction "must be construed broadly. . . . A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Id.*

The question of whether a judge acted in excess of his or her authority in making a judicial ruling (covered by immunity) is a distinct issue from the question of whether a judge acted in the clear absence of jurisdiction (not covered by immunity). If a judge exceeds his or her authority in making a judicial ruling in a particular case, that judge is immune only if the case is properly before him or her. *Mireles*, 502 U.S. at 13.

The difference between acting in the absence of jurisdiction and acting in excess of authority is made clear in the following example: "if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune." *Stump*, 435 U.S. at 357 n.7.

In reviewing an allegation that a judge acted in the clear absence of all jurisdiction, the Court considers whether the judge was acting beyond the scope of the subject matter jurisdiction of the court in which he presided. *See id.* at 356-57; *Ashelman*, 793 F.2d at 1076. In instances where "jurisdiction over the subject-matter is invested by law in the judge or in the court which he holds, the manner and extent which the jurisdiction shall be exercised are generally as much

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 6**

questions for his [or her] determination as any other questions involved in the case . . . ." *Stump*, 435 U.S. at 356 n.6.

Article III, § 1, of the United States Constitution provides: "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." United States district courts and United States courts of appeal are Article III courts.

As to subject matter, Article III, § 2, extends federal judicial power "to all Cases, in Law and Equity, arising under this Constitution [and] the Laws of the United States. . . ." Title 28 U.S.C. § 1331 confers subject-matter jurisdiction on federal district courts to hear federal questions, such as those brought under the federal Constitution and *Bivens*.

Congress has authorized the appointment of bankruptcy and magistrate judges who assist Article III courts in their work, but who do not enjoy the protections of Article III. *Id*. Title 28 U.S.C.A. § 636 sets forth "jurisdiction, powers, and temporary assignment" parameters for United States magistrate judges.

Here, the allegations in the Complaint focus on actions arising from functions normally performed by a magistrate judge, including holding hearings and issuing orders under the jurisdiction of the presiding district judge. Therefore, it appears that judicial immunity applies to preclude Plaintiff's claims against Judge Grasham.

For purposes of further amendment, Plaintiff must review his claims to determine whether he can meet the "non-judicial acts" or "absence of all jurisdiction" exceptions set forth above that would permit him to proceed on a claim against Judge Grasham. If Plaintiff has facts showing that judicial immunity does not apply, he must assert them in an amended complaint.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 7**

### 4. Claims Barred by Prosecutorial Immunity

Plaintiff brings claims against United States Assistant Attorney General Kassandra McGrady. Federal appellate courts have repeatedly held that a prosecutor is entitled to absolute quasi-judicial immunity from liability for damages in civil suits when the complaint alleges that the wrongful acts were committed by the prosecutor in the performance of an integral part of the criminal judicial process. *See, e.g.*, *Robichaud v. Ronan*, 351 F.2d 533, 536 (9th Cir. 1965); *Imbler v. Pachtman*, 424 U.S. 409 (1976) (analogous action under 42 U.S.C. § 1983, relying on *Yaselli v. Goff*, 275 U.S. 503, 503 (1927) (*per curiam*) (*summarily affirming lower court decision*, 12 F.2d 396 (2d Cir. 1926) (holding that a federal prosecutor is immune from a malicious prosecution suit)). *See also Butz v. Economou*, 438 U.S. 478, 504 (1978) (clarifying that it is "untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials").

To determine immunity, the Court must review whether the acts complained of were tasks that are an integral part of the criminal justice process include initiating and pursuing a criminal prosecution, *Imbler*, 424 U.S. at 410, preparing and filing charging documents, *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997), and participating in probable cause hearings, *Burns v. Reed*, 500 U.S. 478 (1991).

Because the immunity test is based upon function, a prosecutor has only qualified immunity when "performing investigatory or administrative functions" or when "essentially functioning as a police officer or detective." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (relying on *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)).

Here, Plaintiff is asserting that the United States attorney filed a fraudulent and fictitious petition, asking that a warrant to be ordered for his arrest and that he be detained in a holding

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 8**

facility by the United States Marshal Service. All of these acts were performed in pursuit of a prosecution for a probation violation. It is clear that allegations of a malicious prosecution fall within the protection of absolute quasi-judicial immunity. Plaintiff may not include such a claim in his amended complaint unless he can show how this Defendant's acts were investigative or administrative acts not covered by absolute quasi-judicial immunity.

5. **Claims That May be Subject to Quasi-Judicial Immunity**

Plaintiff brings claims against United States probation officers Crystal Laleman and Colin Starry. Under the law, some probation officer functions are covered by absolute quasi-judicial immunity or absolute witness immunity, both of which require dismissal of such claims at the pleadings stage, while other functions must be analyzed under qualified immunity grounds, which is an issue that is decided after the pleading stage of litigation, but before general discovery is undertaken. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009) (observing that rulings on the qualified immunity defense "should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive," inasmuch as the defense is "an immunity from suit rather than a mere defense to liability.").

In *Demoran v. Witt*, 781 F.2d 155, 157-58 (9th Cir. 1985), the court held that probation officers preparing presentence reports for judges are entitled to absolute immunity from suit for damages under § 1983 because they "serve a function integral to the independent judicial process. Like parole board members, they act as an arm of the sentencing judge." *Id*. at 157 (punctuation and citation omitted).

Absolute witness immunity does not extend to "complaining witnesses," such as probation officers making allegations in arrest warrants in an attempt to support a prosecution. *Malley v.*

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 9**

*Briggs*, 475 U.S. 335, 340 (1986); *see also Harris v. Roderick*, 126 F.3d 1189, 1198-99 (9th Cir. 1997) (holding that police officer witnesses are not entitled to absolute witness immunity for perjured grand jury testimony that brings about a wrongful prosecution).

Nevertheless, qualified immunity may apply to complaining witnesses, under an objective standard. Qualified immunity applies where "officers of reasonable competence could disagree" on whether a warrant should issue. *Briggs*, 475 U.S. at 341. But, if "it is obvious that no reasonably competent officer would have concluded that a warrant should issue," then qualified immunity should not be applied. *Id*.

Here, Plaintiff has not stated sufficient facts to enable the Court to screen the claims against the United States probation officers. Plaintiff will be granted leave to amend.

### 6. Claims Barred by Sovereign Immunity

Plaintiff has also sued the United States and the United States Marshal Service. The United States is a sovereign, and therefore, it cannot be sued in federal court absent a waiver of sovereign immunity that acts as consent to be sued. *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985) The United States Court of Appeals for the Ninth Circuit has held that "*Bivens* does not provide a means of cutting through the sovereign immunity of the United States itself." *Arnsberg v. United States*, 757 F.2d 971, 980 (9th Cir. 1985).

Nor can a *Bivens* claim be asserted against the United States or an agency of the United States. *F.D.I.C. v. Meyer*, 510 U.S. 471, 484-86 (1994); *Cato v. United States*, 70 F.3d 1103, 1110-11 (9th Cir. 1995). *Bivens* was not intended to be a mechanism for deterring the unconstitutional actions of a federal agency or the United States but is aimed at the federal actors themselves. *Meyer*, 510 U.S. at 484-86.

Accordingly, Plaintiff should not include these two Defendants in any amended complaint.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 10**

### INSTRUCTIONS FOR AMENDMENT AND FOR PAYMENT OF FILING FEE

If Plaintiff chooses to file an amendment, he must provide facts showing a sufficient causal connection between each Defendant's actions and the claimed deprivation of Plaintiff's constitutional rights. *Taylor v. List*, 880 F.2d 1040, 1045 (1989); *see Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 (a complaint is insufficient if it "tenders naked assertions devoid of further factual enhancement") (punctuation altered).

An amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1. An amended pleading completely replaces the original pleading.

If Plaintiff fails to file anything further in this matter, his Complaint may be dismissed without prejudice for failure to state a federal claim upon which relief can be granted and/or failure to obey an order of the Court under Rule 41(b).

### ORDER

**IT IS ORDERED:**

1. Plaintiff must decide whether to pursue his claims in this case or in Case 337, and/or whether to file a notice of voluntary dismissal.

2. If Plaintiff decides to pursue his claims in this action, he must file an amended complaint, correcting the deficiencies set forth above, no later than **thirty (30) days** after entry of this Order. No claims brought in any amended complaint in this action shall duplicate claims made in any other pending action maintained by Plaintiff.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 11**

3. Plaintiff's Application for Leave to Proceed in Forma Pauperis (Dkt. 1) is GRANTED to the extent that Plaintiff will not be required to pay the filing fee in full at this time but shall pay no less than $12.00 per year toward his filing fee in this action until the $350.00 fee is paid in full.

DATED: March 15, 2024

Amanda K. Brailsford
U.S. District Court Judge

**INITIAL REVIEW ORDER BY SCREENING JUDGE** - 12